# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONNA MARIE BROCCHINI,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1]<br><br>Defendant. | 1:17-cv-00115 GSA<br><br>**ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT NANCY BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY, AND AGAINST PLAINTIFF DONNA MARIE BROCCHINI** |

## I. <u>INTRODUCTION</u>

Plaintiff, Donna Marie Brocchini ("Plaintiff"), seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her applications for Disability Insurance Benefits ("DBI") and Supplemental Security Income ("SSI") pursuant to

---

[1] Pursuant to Fed. R. Civ. Pro. 25(d), Nancy A. Berryhill shall be substituted in for Carolyn W. Colvin, as Nancy A. Berryhill is now the acting Commissioner of Social Security.

Titles II and XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs which were submitted without oral argument to the Honorable Gary S. Austin, United States Magistrate Judge.[2] (*See,* Docs. 15, 16 and 17). Upon a review of the entire record, the Court finds that the ALJ applied the correct legal standards and the decision is supported by substantial evidence. Therefore, the Court AFFIRMS the agency's disability determination and DENIES Plaintiff's appeal.

## II. FACTS AND PRIOR PROCEEDINGS[3]

### A. Background

Plaintiff filed applications for DIB and SSI alleging she was disabled beginning October 25, 2010,[4] due to chronic obstructive pulmonary disease ("COPD"), glaucoma, no eye sight in the left eye, two clogged arteries, bilateral carpal tunnel syndrome ("CTS"), knee pain, poor circulation in the legs/feet, depression, and asthma. AR 25; 199-218. The parties agree that the Plaintiff properly exhausted her administrative remedies and that the Appeals Council denied Plaintiff's appeal. (Doc. 15, pgs. 4-5 and Doc. 16, pg. 1-2). Therefore, this appeal is a review of Administrative Law Judge Sharon Madsen's ("ALJ") decision issued on July 31, 2015, which is considered the Commissioner's final order. *See*, 42 U.S.C. §§ 405(g), 1383(c)(3). AR 24-34.

### B. Summary of the Medical Record

The Court has reviewed the entire medical record. Relevant portions of the record will be referenced in the discussion where appropriate. AR 333-664.

## III. THE ISSUES PRESENTED

Plaintiff argues that: (1) the ALJ improperly determined that her depression was non-severe at step-two; (2) the ALJ's residual functional capacity ("RFC") is not supported by substantial evidence; and (3) the ALJ's step four evaluation is not supported by substantial evidence. Plaintiff requests that she be awarded benefits, or alternatively, that the case be remanded for further consideration of these issues. (Doc. 15, pgs. 4-19; Doc. 17 pgs. 1-4). In opposition, the Commissioner argues that: 1) the ALJ properly found Plaintiff's depression was a

---

[2] The parties consented to the jurisdiction of the United States Magistrate Judge. (*See* Docs. 9 and 12).

[3] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

[4] Plaintiff initially alleged a disability date beginning September 30, 2010, but amended that date to October 25, 2010 at the hearing. AR 25.

2

non-severe impairment; 2) the RFC assessment is supported by substantial evidence and is free of legal error; and 3) Plaintiff did not meet her burden at step four because she failed to establish she is unable to perform her past work. As such, the ALJ's decision should be affirmed. (Doc 16, pgs. 6-11).

## IV. THE DISABILITY STANDARD

To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.
> 42 U.S.C. § 1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The ALJ must consider objective medical evidence and opinion testimony. 20 C.F.R. §§ 404.1527, 404.1529, 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically-determinable "severe" impairments,[5] (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the RFC to perform her past relevant work,[6] and

---

[5] "Severe" simply means that the impairment significantly limits the claimant's physical or mental ability to do basic work activities. See 20 C.F.R. §§ 404.1520(c), 416.920(c).

[6] Residual functional capacity captures what a claimant "can still do despite [his or her] limitations." 20 C.F.R. §§

3

(5) whether the claimant had the ability to perform other jobs existing in significant numbers at the regional and national level. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f).

### V. SUMMARY OF THE ALJ'S DECISION

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff met the insured status requirements through December 31, 2015, and that she had not engaged in substantial gainful activity since October 25, 2010. AR 27. At step two, the ALJ identified COPD, tobacco use, glaucoma with end stage glaucoma and vision loss in the left eye, as severe impairments. However, she also determined that Plaintiff's gastroesophageal disease, hiatal hernia, partial carotid stenosis, and depression were not severe impairments. AR 27-30. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listing impairments in 20 C.F.R. Part 404 P, Appendix 1. AR 30. However, the ALJ also determined that Plaintiff had the RFC to perform medium work as defined in 20 CFR §§ 404.1567(c) and 416.967(c), with the following restrictions: she can lift and carry fifty pounds occasionally and twenty-five pounds frequently; sit, stand, and walk for a total of six hours in an eight-hour workday; avoid contact with cold, heat, and humidity, wetness, dust, gases, and fumes; and she cannot work at heights or around dangerous machinery. Additionally, the ALJ found that Plaintiff needs to avoid jobs with the risk of injury to the right eye. In reaching these conclusions, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible. AR 30-33. Given the above, at step four, the ALJ found Plaintiff could perform her past relevant work as a cashier-checker, security guard, and informal waiter/waitress. AR 33-34. The ALJ therefore concluded Plaintiff was not disabled. AR 34.

### VI. THE STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether (1) it is supported by substantial evidence, and (2) it applies the correct legal standards. *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007).

---

404.1545 and 416.945. "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n. 2 (9th Cir. 2007).

4

"Substantial evidence means more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.* Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id*.

## VI. DISCUSSION
### A. The ALJ's Decision Finding That Plaintiff's Depression is a Non-Severe Impairment is Supported by Substantial Evidence.

Plaintiff argues that the ALJ failed to properly consider her depression and mental limitations at step two of the sequential evaluation, and therefore improperly found her depression was a non-severe impairment. (Doc.15, pgs. 12-15; Doc. 17, pgs. 1-2). Defendant contends that the ALJ's step two determination is supported by substantial evidence. (Doc. 25, pgs. 4-6).

At step two of the sequential evaluation process, the ALJ must conclude whether Plaintiff suffers from a "severe" impairment. The regulations define a non-severe impairment as one that does not significantly limit [the claimant's] physical and mental ability to do basic work activities. An impairment is not severe "if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *Smolen v. Chater*, 80 F. 3d 1273, 1290 (9th Cir. 1996). To satisfy step two's requirement of a severe impairment, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings - the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. §§ 404.1508, 416.908. The effects of all symptoms must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptoms. 20 C.F.R. §§ 404.1529, 416.929. Further, the ALJ must consider the combined effect of all of the claimant's impairments on his or her ability to function, without regard to whether each alone was sufficiently severe. 42 U.S.C. § 423(d)(2)(B). The combined effect "shall be considered throughout the disability determination process. *Id*. The adjudicator's role at step two is further explained by SSR 85-28:

> A determination that an impairment(s) is not severe requires a careful evaluation of the medical findings which describe the impairment(s) and an informed judgment about its (their) limiting effects on the individual's physical and mental ability(ies) to perform basic work activities; thus, an assessment of function is inherent in the medical evaluation process itself. At the second step

5

of sequential evaluation, then, medical evidence alone is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities.

SSR 85-28.

Here, the ALJ identified Plaintiff's CPOD, tobacco use, glaucoma with end stage glaucoma and vision loss in the left eye, as severe impairments. AR 27-30. However, the ALJ also determined that Plaintiff's depression was non-severe.[7] AR 12. In doing so, she reasoned as follows:

> The claimant's depression considered singly or in combination with other impairments does not cause more than a minimal limitation in her ability to perform basic mental work activities and is therefore nonsevere. The claimant reported being depressed with feelings of guilt and worthlessness and clinicians diagnosed depression. They prescribed medication for the condition, including citalopram; but a mental status examination showed she was oriented times four with a logical thought process, normal perception, a good memory, and normal ability to concentrate. She received minimal psychiatric treatment; however, she was discharged because she did not follow through with it.
>
> Subsequent to the discharge, her mental status was generally normal, as she was cooperative and alert and oriented times four with normal speech, and with normal mood and affect. In addition, there were no restrictions on activities of daily living, thought process was goal-directed, and thought content was not delusional.

AR 28 (Citations omitted)

As part of the analysis, the ALJ also summarized the medical record including the opinion Dr. Ekram Michiel M.D., a consultative examining physician who performed a psychiatric evaluation on June 7, 2013. AR 459-462. Dr. Michiel opined Plaintiff could maintain attention and concentration to carry out simple job instructions and could relate and interact with coworkers, supervisors, and the general public. AR 461. He also opined Plaintiff would not be able to carry out an extensive variety of technical and/or complex instructions. Finally, he found Plaintiff had no restrictions on her activities of daily living. AR 461-462. The ALJ gave this opinion limited weight because it was not supported by other evidence in the record. AR 28. Specifically, the ALJ determined that the opinion was inconsistent with subsequent notes from Plaintiff's primary care physician who reported no depression with a normal mood and affect.

---

[7] As previously mentioned, the ALJ also determined that Plaintiff's gastroesophageal disease, hiatal hernia, and partial carotid stenosis were non-severe impairments. AR 14-15.

The ALJ found that Dr. Michiel's limitation was also inconsistent with other parts of his report that indicated that Plaintiff's thought processes was goal-directed, her thought content was not delusional, and there was no restriction on her activities of daily living. AR 29; 459-462. The ALJ's findings were proper here because inconsistent findings in a doctors' report is a valid basis to reject the opinion. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (rejecting physician opinion where physician's "other recorded observations and opinions" contradicted his ultimate conclusions).

The ALJ also rejected the opinions of Dr. Jane Buerger, PhD, and Dr. Heather Barrons, PsyD, two state agency non-examining psychologists. On June 27, 2013 and December 27, 2013 respectively, they opined that Plaintiff was able to understand, remember and carry out simple tasks and had moderate limitations in her ability to: carry out detailed instructions; maintain attention and concentration for extended periods; and perform activities within a schedule including maintaining regular attendance, and being punctual. AR 74-75; 90-91; 127-129. When giving these doctors' opinions limited weight, the ALJ again cited to subsequent treatment notes indicating that Plaintiff was not depressed and had a normal mood and affect. The ALJ also relied on the fact that Plaintiff discontinued treatment for her depression. AR 29. After considering this evidence, the ALJ evaluated Plaintiff's affective disorder under section 12.04B and concluded that Plaintiff had no restrictions in activities of daily living or social functioning, and had mild difficulties in maintaining concentration, persistence or pace.

Plaintiff argues that the ALJ's findings are not supported by substantial evidence because the ALJ improperly rejected all three of the doctors' opinions that Plaintiff was limited to simple job instructions, which would impact her ability to work. Here, since all three opinions were consistent and not contradicted, the ALJ was required to give clear and convincing reasons for rejecting the findings. *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017). A review of the records shows that the ALJ did so in this case. For example, Plaintiff began treatment at Madera County Behavioral Health Services in September 2012 and was diagnosed with major depression. AR 28-29; 430. However, she was discharged in January 2013 because she did not follow through with treatment. AR 28-29; 422-432. In January 2013, Plaintiff continued to complain of depression to Dr. Hernandez (her primary care physician) as reflected in his treatment notes. AR 28-29; 523 (1/14/13 – depression noted); AR 529 (1/17/14-moderate depression noted, sleeping

sixteen hours a day). Plaintiff was prescribed Citalopram and Wellbutin in early January 2013. AR 28-29; 529. When Plaintiff was evaluated by Dr. Michiel in June of 2013, she again reported she was depressed. AR 461-462. However, during an emergency room visit in October 2013 when Plaintiff was being treated for vomiting, it was reported that she had no pertinent psychological history, that she had a normal mood and was cooperative. AR 28-29; 466-467. By January 2014, Plaintiff reported no depression or anxiety to Dr. Hernandez. AR 28-29; 520. Similar findings were made by Dr. Hernandez in July 2014 (AR 518 – no depression, no anxiety, no change in mood, and no insomnia), and in February 2015, when Plaintiff was treated in the emergency room again, she was cooperative with a normal mood and she denied depression and anxiety. AR 28-29; 543-544. Plaintiff's failure to follow through with treatment and subsequent progress notes indicating her depression had lessened, is substantial evidence that supports the ALJ's findings that Plaintiff does not have a mental impairment that would cause more than a minimal limitation in her ability to perform work activities. AR 28-29. As such, the ALJ properly concluded that Plaintiff's depression was a non-severe impairment at step two. AR 28-29.

### B. The ALJ's formulation of the RFC and Step Four Analysis are Supported by Substantial Evidence.

Plaintiff contends that the ALJ's formulation of the RFC was not proper because she found Plaintiff could perform medium work. She argues that the ALJ failed to include the consultative examiner's opinion that Plaintiff should be limited to light work, and that she was unable to perform tasks requiring binocular vision into the RFC due to very poor vision in her left eye. (Doc. 15, pgs. 15-19; Doc. 17, pgs. 2-4). The Defendant argues that the ALJ's RFC is supported by substantial evidence because it contains the limitations she found to be credible, and the ALJ properly rejected more restrictive limitations that were not supported by the record. The Commissioner also contends that after presenting these limitations to the vocational expert, the ALJ properly concluded that Plaintiff could perform her past relevant work at step four.

An RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or equivalent work schedule. SSR 96-8p. The RFC assessment considers only functional limitations and restrictions which result from an individual's medically determinable impairment or combination of impairments. SSR 96-8p. "In determining a claimant's RFC, an

ALJ must consider all relevant evidence in the record including, *inter alia*, medical records, lay evidence, and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins v. Social Security Admin.*, 466 F.3d 880, 883 (9th Cir.2006). As part of evaluating Plaintiff's RFC, the ALJ evaluated three doctors' opinions: Dr. Pannu, a consultative physician; and Drs. Bonnar and De la Rosa, two non-examining physicians.

Dr. Pannu, M.D. completed an examination on Plaintiff in May 2013. AR 451-458. He noted visual acuity with glasses as 20/40 in the right eye, 20/200 in the left eye, and 20/30 with both eyes. Without glasses, he noted 20/200 in the right eye, 20/200 in the left eye, and 20/200 with both eyes. AR 452. He observed left eye blindness and corneal opacity. AR 453. He also noted slight wheezing in the lungs and slight hepatomegaly in the abdomen. AR 453. He opined Plaintiff retained the ability to: sit, stand, or walk for six to eight hours with frequent breaks in an eight hour day; frequently bend or stoop; and frequently lift and carry twenty pounds. AR 455. He opined Plaintiff had monocular vision and would not be able to perform tasks involving binocular vision, and that she should avoid fumes and extremes of environment due to COPD. AR 455.

In June 2013, non-examining physician, Dr. J. Bonner, M.D., reviewed the medical record and formulated an RFC for medium work. The doctor also noted visual limitations including limited near and far acuity and depth perception in the left eye. He opined Plaintiff should avoid concentrated exposure to extreme cold/heat, wetness, and humidity; avoid moderate exposure to fumes, odors, dusts, gases, and poor ventilation due to COPD; and avoid all exposure to hazards. He also opined Plaintiff should not participate in metal grinding or other eye risks, and she should use visual protection in such activities. AR 72-74; 88-90. In December 2013, Dr. C. De la Rosa, M.D., another non-examining state physician, largely affirmed the RFC assessment of Dr. Bonner; however, Dr. De la Rosa recommended avoiding concentrated exposure to fumes, odors, dusts, gases, and poor ventilation rather than avoiding moderate exposure. AR 107-109.

When assessing the medical record, the ALJ gave the greatest weight to Drs. Bonner and De la Rosa's opinions. AR 32. She found that these doctors' opinions were most consistent with the medical record and adequately accounted for Plaintiff's CPOD and her lack of vision in the left eye. AR 32 citing AR 348 (noting moderate COPD); AR 443 (noting diminished breath sounds and abnormal bronchial breathing); and AR 455 (using inhalers and not on oxygen at home); AR 288-289 (Plaintiff's self-report of her vision) and AR 451-455 (findings of Dr.

Pannu's physical examination). The ALJ rejected Dr. Pannu's opinion related to his postural limitations, including bending and stooping, because these restrictions were inconsistent with generally unremarkable musculoskeletal examinations, normal gait and stance with no joint deformities, a normal range of motion, and full motor strength in the extremities. AR 32 (citing to the same records as above).

Plaintiff contends that the ALJ's rejection of Dr. Pannu's opinion is improper because although the ALJ explained the reason for rejecting Dr. Pannu's postural limitations, she did not specifically address why she rejected Dr. Pannu's findings that Plaintiff should be limited to light work. Similarly, she argues the ALJ did not address Plaintiff's visual limitations in her left eye, namely that she is restricted from activities requiring binocular vision. The Court finds Plaintiff's arguments are misplaced for several reasons.

First, when evaluating the non-examining physicians' opinions, the ALJ noted that she was giving them more weight because they adequately accounted for Plaintiff's COPD, and *the lack of vision in her left eye*. AR 32. Both of these doctors found Plaintiff had good vision only in one eye and recommended that she protect the right eye. AR 74; 108. The ALJ adopted this restriction and incorporated it into the RFC to address Plaintiff's limited vision in her left eye. AR 30 (RFC stating Plaintiff "needs to avoid jobs with risks of injury to her right eye"). The ALJ also references unremarkable musculoskeletal examinations, normal gait, normal joint deformities, full range of motion and full muscle strength in the extremities as a basis for adopting these doctors' other findings. AR 32; 288-289; 348; 443; 451-455. Plaintiff argues that because the ALJ only discueessed these factors when referencing the postural limitations, the ALJ did not properly reject Dr. Pannu's opinion that Plaintiff could only perform light work as opposed to medium work. The Court disagrees. The ALJ stated she was giving the non-examining physicians' opinions more weight because they were most consistent with the record which is permissible. AR 32. An ALJ may choose to give more weight to an opinion that is more consistent with the evidence in the record. 20 C.F.R. §§ 404.1527(c) (4); 416.927(c)(4) ("the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion"). Moreover, because there were contradicting doctors' opinions, the ALJ only needed to provide specific and legitimate reasons for rejecting Dr. Pannu's decision. *Garrison v. CSS*, 759 F.3d 995, 1012 (9th Cir. 2014); *Ghanim v. CSS*, 763 F. 3d 1155, 1161 (9th Cir. 2014). The ALJ did so here by

identifying evidence in the record that she felt more appropriately captured Plaintiff's limitations – specifically, unremarkable musculoskeletal examinations, normal gait, normal joint deformities, and full range of motion and full muscle strength in the extremities. AR 31-32. Reliance on non-examining physicians' opinions may constitute substantial evidence when they are "consistent with independent clinical findings or other evidence in the record." *Thomas*, 278 F.3d at 957. Moreover, it is well established that the RFC is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner. *See* 20 C.F.R. §§ 404.1527(d)(2) (RFC is not a medical opinion), 416.927(d)(2)(same),404.1546(c)(identifying the ALJ as responsible for determining RFC), 416.946(c) (same). Here, Plaintiff summarized the medical record and disagrees with the ALJ's conclusions regarding this evidence. However, she has not established any legal error with the ALJ's analysis used to formulate the RFC. Instead, she merely sets forth her interpretation of the same evidence the ALJ analyzed and asks the Court to choose her interpretation over the ALJ's analysis. While the Court is sympathetic to Plaintiff's case, where more than one rational interpretation of the evidence exists, the ALJ's conclusion must be upheld. *Thomas*, 278 F.3d at 954; *Magallanes*, 881 F.2d at 750. Therefore, the RFC is supported by substantial evidence.

Similarly, the ALJ's analysis at step four is also proper. The step four analysis is limited to determining whether the claimant can perform his or her past relevant work, and involves a comparison between the demands of the claimant's former work and his or her present capacity. 20 CFR §§ 404.1520 and 416.920; *Villa v. Heckler*, 797 F.2d 794, 798 (9th Cir. 1986). It is Plaintiff's burden to demonstrate that she is unable to return to the previous job, and if she is unable to do so, the burden remains with her rather than shifting to the Commissioner to proceed with step five. *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993). At step four of the disability analysis, the claimant has the burden to prove she cannot perform her prior relevant work "either as actually performed or as generally performed in the national economy." *Carmickle*, 533 F. 3d 1155, 1166 (9th Cir. 2005).

In this case, the ALJ presented the RFC to the VE who testified that Plaintiff could perform her past work as a cashier-checker, a security guard, and a waitress, even with her limitations. AR 55-59. Based on this evidence, the ALJ concluded that Plaintiff could perform her past work both as it was actually and generally performed in the national economy. AR 33-34. Therefore, the ALJ applied the correct legal standard and her step four findings are supported by substantial evidence.

11

**VII. CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence and is based on the correct legal standards. Accordingly, this Court DENIES Plaintiff's appeal. The Clerk of this Court is DIRECTED to enter judgment in favor of Nancy A. Berryhill, Commissioner of Social Security and against Donna Marie Brocchini, and to close this action.

IT IS SO ORDERED.

Dated: **June 14, 2018** **/s/ Gary S. Austin**
UNITED STATES MAGISTRATE JUDGE